## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Geneva Wofford, *Individually and* | : | |
| *as Administratrix of Estate of Eric T.* | | |
| *Wofford,* | : | Case No. 3:06CV1620 |
| | | |
| Plaintiff, | : | |
| | | |
| vs. | : | |
| | | |
| City of Toledo, et al., | : | |
| | | **MEMORANDUM DECISION** |
| Defendants. | : | **AND ORDER** |

The parties have consented to have the Magistrate Judge enter judgment in this civil rights case

filed pursuant to 42 U. S. C. § 1983.  Pending are:

> (1)    a Motion for Summary Judgment filed by Defendants City of Toledo (City) and Michael
> Navarre (Navarre) (Docket No. 45), Plaintiff's Opposition (Docket No. 61) and a Reply
> filed by all Defendants (Docket No. 62);

> (2)    a Motion for Summary Judgment filed by Defendants David M. Avalos (Avalos),
> Richard M. Carl (Carl) and Frank Ramirez (Ramirez) (Docket No. 46), Plaintiff's
> Opposition (Docket No. 61) and a Reply (Docket No. 62); and

> (3)    a Motion to Strike filed by Defendants Avalos, Carl, City, Navarre and Ramirez (Docket
> No. 63) and Plaintiff's Opposition and Supporting Affidavit/Declaration (Docket Nos.
> 64 and 65).

For the reasons that follow, the Motions for Summary Judgment are granted and the Motion to

Strike is denied.

## I. Parties

Eric T. Wofford was a resident of Toledo, Ohio on November 13, 2002.

Plaintiff, a resident of the City of Toledo, Lucas County, Ohio, is Eric Wofford's mother. She is the duly appointed Administratrix of Eric Wofford's estate.

Defendant City of Toledo (City) is a municipal corporation as defined under Ohio Rev. Code § 5705.01(B)[1].

Defendants D. Diggs (Diggs), Kristen Daughbiny (Daughbiny), Patricia Gomez (Gomez), Barbara Hunter (Hunter), Michael Palicki (Palicki), Douglas Przymierski (Przymierski), Vicki Schramm (Schramm), David M. Avalos (Avalos), Richard Carl (Carl) and Frank Ramirez (Ramirez) were police officers employed by the Toledo Police Department (TPD).

Defendant Navarre is the Chief of Police Operations for TPD.

.

## II. Factual background

The facts are not in dispute. During the evening of November 13, 2002, Eric Wofford was agitated and threatening harm to Plaintiff. Police officers arrived at Plaintiff's home with an intent to transport Eric Wofford to a mental health facility. Eric Wofford met the officers on the porch and later the officers followed him inside the home (Docket No. 1, ¶ 9).

Inside the home, police officers spent more than an hour negotiating with Eric Wofford before calling for backup. During this time, Eric Wofford became agitated several times and finally agreed to go to the mental health facility. He exited the room where the officers were to retrieve his coat from

---

[1]

A municipal corporation means all municipal corporations including those that have adopted a charter under Article XVII of the Ohio Constitution. The Charter of the City of Toledo, Ohio, was approved on November 3, 1914. www.toledo.ohio.gov/Departments/PublicService/Division.

another room.  When he returned to the room where the officers were, he had a sword which he brandished in the air[2] (Docket No. 1, ¶ 10).  The police officers, later identified as Defendants Avalos and Ramirez, fired multiple gun shots at Eric Wofford.  Eric Wofford died from those gun shot wounds (Docket No. 1, ¶ 9; Docket No. 46 p. 3 of 14).

## III. PROCEDURAL BACKGROUND

In July 2006, Plaintiff filed a complaint in this Court (Docket No. 1).  A return of service was executed upon TPD Officers Avalos, Carl, Daughbiny, Diggs, Gomez, Hunter, Chief Navarre, Palicki, Pryzmierski, Ramirez, Schramm, and the City by personal service (Docket No. 7).  The Magistrate approved a stipulation dismissing, pursuant to FED. R. CIV. P.  41(A), Defendants Diggs, Daughbiny, Gomez, Hunter, Palicki, Pryzmierski, and Schramm (Docket No. 34).

In October 2009, Defendants City and Navarre filed a Motion for Summary Judgment and Defendants Carl, Ramirez and Avalos filed a Motion for Summary Judgment or some alternative finding of Qualified Immunity.  In April 2010, Plaintiff filed an Opposition to both pending summary judgment motions.  On April 26, 2010, Defendants City, Navarre, Ramirez, Carl and Avalos filed a Motion to Strike to which Plaintiff filed an Opposition and supporting Affidavit/Declaration.

## IV. DISCUSSION OF MOTION TO STRIKE

Defendants contend that Plaintiff attached to her Opposition, Exhibit B, an excerpt from the Major Crimes Book, Exhibit C, a copy of the TPD Standard Operating Guidelines for Use of Force, Exhibit D, a copy of an article that describes the best practices of police operations and Exhibit E, a copy of the TPD Standard Operating Guidelines for resolution of issues with the mentally and

---

[2]

Defendants describe the sword as three feet in length (Docket No. 45, p. 4 of 8).

developmentally ill.  None of these exhibits have been authenticated.  Accordingly, Plaintiff seeks an order striking them from the record.

Under FED. R. CIV. P. 12(f), the court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter.  *Barnes v. City of Toledo*, 2010 WL 1268044, *13 (N. D. Ohio 2010) Rule 12(f) specifically relates to matters to be stricken from pleadings and does not make provisions for testing the legal sufficiency of exhibits.  *Id.*

Motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy or would prejudice the movant.  *Id.* (*citing Frisby v. Keith D. Weiner & Associates Company, LPA,* 2009 WL 3818844, *1 (N. D. Ohio 2009) (*citing Brown & Williamson Tobacco Corporation v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *see also United States v. American Electrical Power Services Corporation,* 281 F. Supp. 931, 935 (S. D. Ohio 2002); 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1382 (3rd ed. 2004)).  A motion to strike is addressed to the sound discretion of the trial court.  *Id.* (*citing In re Keithley Instruments, Incorporated,* 599 F. Supp.2d 908, 911 (N. D. Ohio 2009) (*citing Ameriwood Industrial International Corporation v. Arthur Andersen & Company*, 961 F. Supp. 1078, 1083 (W. D. Mich.1997)).

The Magistrate will not strike Exhibits B, C, D, or E.  The Magistrate will consider counsel's offer of authentication of Exhibits B, C and E as public records.  The Magistrate will not consider Exhibit D as there can be no foundation for the admissibility of an article prepared by Attorney Jack Ryan in which he discusses the best practices of successful police operations.  The Motion to Strike is denied; however, Exhibit D will be considered.

## V. STANDARD FOR SUMMARY JUDGMENT REVIEW

4

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Reed v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America,* 569 F.3d 576, 578 -579 (6th Cir. 2009) (*citing* FED. R. CIV. P. 56(c)).  All evidence, facts, and inferences must be reviewed in the light most favorable to the nonmoving party.  *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation,* 106 S.Ct. 1348, 1356 (1986)).

In order to defeat a summary judgment motion, the nonmoving party "must show sufficient evidence to create a genuine issue of material fact."  *Id.* (*citing Prebilich-Holland v. Gaylord Entertainment Company,* 297 F.3d 438, 442 (6th Cir. 2002) (*citing Klepper v. First American Bank,* 916 F.2d 337, 342 (6th Cir. 1990)).  The nonmoving party must provide more than a scintilla of evidence. *Id.* (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2512 (1986)).  That is, the nonmoving party must present evidence sufficient to permit a reasonable jury to find in its favor.  *Id.* Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* (*citing Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2552 (1986); *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996)).

## VI. DISCUSSION OF THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS AVALOS, CARL AND RAMIREZ

Defendants Avalos, Carl and Ramirez assert that they were dispatched to investigate the disturbance caused by Eric Wofford and to transport him to the rescue crisis center for treatment. Acting in their capacity as a community caretaker, their entry into Plaintiff's home was legal, they did

5

not seize Eric Wofford and the use of deadly force was reasonable.  Assuming the Court concludes that Plaintiff has established a colorable constitutional claim, Defendants Avalos, Carl and Ramirez contend that they are entitled to a finding of qualified immunity.

1.    FEDERAL CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY.

Plaintiff alleges that Defendants Avalos, Carl and Ramirez were acting in their official capacity at the time of seizure and arrest (Docket No. 31, Exhibit 1, p. 5/17).  Judgment, Defendants contend, should be accorded them as a matter of law since they acted reasonably under the circumstances.  In addition, Defendants claim that they are immune from liability for all of Plaintiff's claims.

It is well settled that individuals sued in their official capacity stand in the position of the entity they represent.  *Everson v. Leis*, 556 F. 3d 484, 493 fn. 3 (6th Cir. 2009).  Official capacity suits represent only another way of pleading an action against the entity of which an officer is an agent.  *Id.* Because the governmental entity itself is not liable to suit, to the extent that a government official is sued for damages in his or her official capacity, the official is entitled to invoke the Eleventh Amendment immunity belonging to the governmental entity he or she represents.  *Id.* (*citing Brandon v. Holt,* 105 S. Ct. 873, 877-878 (1985).

To the extent that Defendants Avalos, Carl and Ramirez invoked their entitlement to immunity in their answers and responsive pleadings, they are immune from Plaintiff's claims against them in their official capacities.  Defendants are granted judgment as a matter of law as to Plaintiff's claims against them in their official capacity.

2.    FEDERAL CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES (FIRST CLAIM FOR RELIEF).

Plaintiff also brings suit against Defendants in their individual capacity for civil rights violations

pursuant to 42 U. S. C. § 1983.

In relevant part, 42 U.S.C. § 1983 provides that every person who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages. *Ross v. Duggan*, 402 F. 3d 575, 581 fn.1 (6th Cir. 2004).  Section 1983 creates no substantive rights but merely provides remedies for deprivation of rights established elsewhere.  *Tuttle v. Oklahoma City*, 105 S. Ct. 2427 (1985).

To state a successful claim under 42 U.S.C. § 1983, a plaintiff "must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law."  *Adair v. Charter County of Wayne,* 452 F.3d 482, 491 -492 (6th Cir. 2006) (*citing Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir. 1992)).  The plaintiff needs to demonstrate that (1) the conduct at issue must have been under color of state law, (2) the conduct caused a deprivation of constitutional rights, and (3) the deprivation occurred without due process of law.  *Id.* (*citing Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir. 1987)).  Because Section 1983 is only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a Section 1983 claim.  *Id.* (*citing Graham v. Connor,* 109 S.Ct. 1865, 1870 (1989); *Upsher v. Grosse Pointe Public School System,* 285 F.3d 448, 452 (6th Cir. 2002)).

In her complaint, Plaintiff alleges that Defendants Avalos, Carl and Ramirez deprived Eric Wofford of his right to be free from unreasonable seizures by the use of excessive force.  There is no dispute that Defendants Avalos, Carl and Ramirez were acting under color of state law as TPD officers when the shooting occurred.  The Magistrate must determine, however, whether Defendants deprived Eric Wofford of a federally protected right.

7

A.     IS THERE A FEDERALLY PROTECTED RIGHT FOR UNLAWFUL SEIZURE (FIRST CLAIM FOR RELIEF)?

Plaintiff contends that the seizure of Eric Wofford by use of deadly force was in contravention of the protections of the Fourth Amendment of the United States Constitution.  Defendants argue that Plaintiff's claims against Defendants Avalos, Carl and Ramirez do not constitute an actionable deprivation of rights secured under the Fourth Amendment of the United States Constitution.

The Fourth Amendment declares, in relevant part, the right of the people to be secure in their persons against unreasonable seizures.  U. S. CONST. amend. IV.  A seizure occurs only when the officer, through force or a show of authority, has restrained the liberty of a person.  *Immigration & Naturalization Services v. Delgado*, 104 S. Ct. 1758, 1762 (1984).

As a general rule, a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime.  *Williams ex rel. Allen v. Cambridge Board of Education,* 370 F.3d 630, 636 (6th Cir. 2004) (*see Beck v. Ohio,* 85 S. Ct. 223, 225 (1964)).  Probable cause means the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Id*. at 636-637 (*citing Michigan v. DeFillippo,* 99 S. Ct. 2627, 2632 (1979)).

Once "probable cause is established," an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.  *Id.*  Officers must consider the totality of the evidence "known to them" when considering probable cause, and in cases where they have both inculpatory and exculpatory evidence they must not ignore the exculpatory evidence in order to find probable cause.  *Id.* (*citing Ahlers v. Schebil,* 188 F.3d, 365, 372 (6th Cir. 1999)). .

8

Construing the information conveyed in the pleadings in Plaintiff's favor, the Magistrate does not find that Plaintiff's Fourth Amendment right to be free from unreasonable seizures was violated. Plaintiff called Defendants to restrain Eric Wofford from causing physical harm and transport him to a health care facility.  In effect, Plaintiff requested that Defendants seize Eric Wofford.  Upon their arrival at Plaintiff's residence, Defendants had probable cause to believe that Eric Wofford had committed a crime against or was about to commit a crime.  There is no jury question as to whether Defendants violated a clearly established constitutional right.  Defendants are shielded from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional right. Summary judgment is granted to Defendants as to Plaintiff's claim of unlawful seizure.

**B.      DID DEFENDANTS VIOLATE A FEDERALLY PROTECTED RIGHT AGAINST USE OF EXCESSIVE FORCE**

Plaintiff brings a claim pursuant to 42 U. S. C. § 1983 alleging that Defendants obviously used excessive force during the seizure of Eric Wofford as it resulted in his death.  Defendants contend that a reasonable officer in their position, acting on the same limited information and caught in rapidly evolving circumstances, would have defended himself/herself and others.  The use of deadly force was necessary to protect Defendants and Plaintiff and, therefore, such force was reasonable.

The Supreme Court has held that excessive force claims are best analyzed under the Fourth Amendment's protection against unreasonable seizures.  *Kostrzewa v. City of Troy* 247 F.3d 633, 639 (6th Cir. 2001) (*citing Graham, supra,* 109 S. Ct. at 1870).  In determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable.  *Id.* (*citing Graham*, 109 S. Ct. at 1872).  The underlying motivations of the officer in making the arrest need not be examined because this is a test of objective reasonableness.

9

*Id.* (*citing Graham*, 109 S. Ct. at. 1872).  In assessing reasonableness, courts should pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Kostrzewa, supra.*  While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*

A law enforcement officer has the legal right to use deadly force if the officer has reasonable cause to believe that the suspect poses an immediate threat to the safety of the officer or others, and that deadly force is needed to avoid that threat.  *Boyd v. Baeppler*, 215 F. 3d 594, 600 (6th Cir. 2000).  In *Boyd*, the suspect was shot when he ran toward officers with a gun in his hand.  *Id.*  Mr. Boyd disregarded the warning to stop, pointing the gun at the officer.  *Id.*  The Court avoided substituting personal notions of proper police procedure and instead construed the facts as perceived by a reasonable police officer.  *Id.*  Because Mr. Boyd was armed and remained an imminent threat and danger until he dropped the weapon after being shot several times by police officers, the police officers were granted qualified immunity.  *Id.*

In this case, Eric Wofford was upset and threatening harm to Plaintiff.  Plaintiff called the police.  Upon arrival, Defendants spent considerable time negotiating with Eric Wofford to surrender so that he could be transported to a mental health facility.  Eventually, Eric Wofford agreed to permit the officers to transport him to a mental health facility.  He left the room and returned with a sword that was three feet in length.  Eric Wofford waved the sword in the air.  Defendants responded with multiple gun shots.  Defendants claim that Eric Wofford was close enough to Defendant Ramirez that he fell on him after the shots were fired (Docket No. 46, p. 3 of 14).  Under the reasonable officer standard, the

Magistrate is persuaded that the crime at issue, assault, was severe.  At that time, Eric Wofford posed an immediate threat to the safety of Defendants Avalos, Carl and Ramirez as well as Plaintiff.  These facts, viewed in a light most favorably to Plaintiff, are insufficient to establish a violation of a clearly established constitutional right to be free from excessive force.  The totality of the circumstances warrants a finding that Defendants' use of force was reasonable.  Defendants are shielded from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional right.

### C.  THE RESULT

Since Plaintiff has failed to show that the adverse action was motivated in response to the exercise of Eric Wofford's Fourth Amendment rights, the Magistrate need not address whether Defendants Avalos, Carl and Ramirez are entitled to qualified immunity.  Defendants are entitled to summary judgment as to Plaintiff's first claim for relief.

### 3.  STATE CLAIM AGAINST DEFENDANTS.

Plaintiff asserts wrongful death (Third Claim for Relief), loss of consortium (Third Claim for Relief) survivorship (Fourth Claim for Relief), wilful and wanton behavior (Fifth Claim for Relief) and assault and battery (Sixth Claim for Relief) claims against Defendants.  Defendants contend that they enjoy qualified immunity from all of Plaintiff's state law claims pursuant to OHIO REV. CODE § 2744.03(A)(6).

### A.  QUALIFIED IMMUNITY FRAMEWORK

As for the state law claims at issue in this case, Defendants invoke immunity under OHIO REV. CODE § 2744.  Section 2744 shields political subdivisions with broad immunity from civil liability.  *Kammeyer v. City of Sharonville*, 311 F. Supp.2d 653, 660 (S. D. Ohio 2003).  The functions of political

11

subdivisions are classified as governmental functions and proprietary functions. *Id.* Police services are considered a government function. *Id.* at 661.

### 1). OFFICIAL CAPACITY SUITS.

Ohio's immunity statute draws no distinction between suits against an individual government employee in his official as opposed to his personal capacity. *Chesher v. Neyer* 477 F.3d 784, 797 (6th Cir. 2007). However, the Ohio Court of Appeals has held that an action against an officer in his "official capacity" is simply another way of pleading an action against the governmental entity itself. *Id.* (*citing Norwell v. City of Cincinnati,* 133 Ohio App.3d 790, 729 N.E.2d 1223, 1232 (1999) (*citing Monell v. New York Department Social Services,* 98 S.Ct. 2018, 2035 (1978)). If official-capacity claims are nothing more than claims against the county, then it would be appropriate to dismiss the official capacity claims against the employee defendants if such claims have been dismissed against the county. *Id.* (*see J & J Schlaegel, Incorporated v. Board of Trustees of Union Township*, Nos.2005-CA-31/2005-CA-34, 2006 WL 1575036, at *10 (June 9, 2006); *Kammeyer, supra*, 311 F. Supp.2d at 661).

Plaintiff's state law claims against Defendants are essentially against the City. Plaintiff's First, Third, Fourth, Fifth and Sixth Claims for Relief are dismissed against Defendants in their official capacity.

### 2). PERSONAL CAPACITY SUITS.

Under OHIO REV. CODE § 2744.03(a)(6), an employee of a political subdivision is immune from liability in a civil action based on any act or omission in connection with a governmental function unless on of the following exceptions applies:

12

(a)     The employee's acts or omissions are manifestly outside the scope of employee's employment or official responsibilities;

(b)     The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c)     Liability is expressly imposed upon the employee by a section of the Revised Code.

Here, Defendants are employees of a political subdivision and police duties are a governmental function. Consequently, Defendants are entitled to immunity for any state law claims unless one of the exceptions listed in OHIO REV. CODE § 2744.03(a)(6) applies.

### a.     PLAINTIFF'S CLAIM FOR WRONGFUL DEATH

In her third claim for relief, Plaintiff brings a wrongful death claim under Ohio law against Defendants. Since Section 1983 is not itself, a source of substantive rights, the Magistrate relies on Ohio's wrongful death statute.

The Wrongful Death statute provides in pertinent part:

When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued . . . shall be liable to an action for damages, notwithstanding the death of the person injured. . . .

OHIO REV. CODE § 2125.01 (Thomson Reuters 2010).

The wrongful death statute creates a distinct and independent cause of action for those who suffer pecuniary loss by virtue of the decedent's wrongful death. *Thompson v. Wing*, 70 Ohio St.3d 176, 637 N.E.2d 917 (1994). An action for wrongful death does not arise until the death of the injured person. *Id.*

A statute of limitations bars a right of action unless it is filed within a specified period of time after an injury occurs. *Eppley v. Tri-Valley Local School District Board of Education*, 122 Ohio St. 3d

13

56, 58, 908 N. E. 2d 401, 404 (2009)).  The statute of limitations on an action for wrongful death is two years.  *Id.*

The Magistrate does not address whether Defendants are entitled to immunity under OHIO REV. CODE § 2744 as Plaintiff's claim for relief was filed more than two years after the cause of action accrued.  Plaintiff was present on November 13, 2002, the date of Eric Wofford's death.  She has not presented evidence that would permit the Court to consider that the two years did not commence at the time of Eric Wofford's death or that the period of time was subject to tolling.  Because Plaintiff has not satisfied the time element of a wrongful death cause of action, she cannot recover on her wrongful death claim.  Plaintiff's Third Claim for Relief is dismissed.

### b.  PLAINTIFF'S CLAIM FOR LOSS OF CONSORTIUM

In her third claim for relief, Plaintiff alleges that she is entitled to damages for the loss of filial consortium.  The allegations do not create a material issue of fact.

Ohio law recognizes the common-law action for parental loss of consortium of a **minor** child. *Wilson v. Columbus Board of Education*, 589 F. Supp.2d 952, 971-972 (S. D. Ohio 2008) (*citing Gallimore v. Children's Hospital Medical Center,* 67 Ohio St.3d 244, 617 N.E.2d 1052, 1060 (1993)). The basis of such a claim is that the third-party tortfeasor negligently or intentionally caused physical injury to the child.  *Id.*  Therefore, the parent is compensated for harm done or for losses suffered as a result of injury to the child and the parent-child relationship.  *Id.* (*citing Rolf v. Tri State Motor Transit Company*, 91 Ohio St.3d 380, 745 N.E.2d 424, 426 (2001)).

Eric Wofford was 37 at the time of his death.  Toledoblade.com.  It is not necessary to address whether Defendants are entitled to qualified immunity as Plaintiff has failed to state a cognizable legal

claim for loss of filial consortium of her minor child under Ohio law. Plaintiff's claim for loss of filial consortium is dismissed.

### c.    PLAINTIFF'S SURVIVORSHIP CLAIMS

Likewise, the Magistrate need not address whether the exceptions apply to Plaintiff's survivorship claim. Under Ohio's general survival statute, a victim's right of action for personal injuries survive and pass to his or her personal representative, notwithstanding that death resulted from injuries for which an action could be maintained under the Wrongful Death Act. OHIO REV. CODE § 2125.01 (Thompson Reuters 2010). Under OHIO REV. CODE § 2305.21, an administrator may maintain an action in the same manner in which decedent could have maintained such action if he or she had survived. *Hillard v. Western & Southern Life Insurance*, 68 Ohio App. 426, 429, 34 N.E.2d 75, 76 (1941). A claim for survivorship is one for the decedent's own injuries and is confined to his or her personal loss and suffering before he or she died. *Estate of Beavers v. Knapp*, 175 Ohio App. 3d 758, 769, 889 N. E. 2d 181, 189 (2008). Damages in a survival action are awarded to compensate for the decedent's pain and suffering and expenses while he or she was alive. *Id.*

The United States Supreme Court unanimously held that when a state has multiple statutes of limitation for personal injury actions, the appropriate state statute of limitations to borrow for claims brought under 42 U.S.C. § 1983 is the residual or general personal injury statute of limitations. *Banks v. City of Whitehall,* 344 F.3d 550, 553 (6ᵗʰ Cir. 2003) (*citing Wilson v.* Garcia, 105 S. Ct. 1938, 1946 (1985); *Owens v. Okure*, 109 S. Ct. 573 (1989)). The appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in OHIO REV. CODE § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual. *Id.* at 992. Under Ohio law, a cause of action accrues and the running of the statute of limitations commences when he or she (1)

15

knew or reasonably should have known of the injury, and (2) knew or reasonably should have known that exposure proximately caused that injury.  *Yacub v. Sandoz Pharmaceuticals Corporation*, 101 F. Supp.2d 852, 858 (S. D. Ohio 1998) (*See Cacciacarne v. G.D. Searle & Company,* 908 F.2d 95, 97 (6th Cir. 1990); *Liddell v. SCA Services of Ohio, Incorporated,* 70 Ohio St.3d 6, 13, 635 N.E.2d 1233, 1239 (1994); *O'Stricker v. Jim Walter Corporation,* 4 Ohio St.3d 84, 88, 447 N.E.2d 727, 731 (1983); *Viock v. Stowe-Woodward Company,* 13 Ohio App.3d 7, 467 N.E.2d 1378, 1384 (1983)).

Assuming that Eric Wofford survived the gunshots, his claims for bodily injury resulting from the shooting accrued at the time of the shooting in November 2002.  This survival action was filed in July 2006, well beyond the expiration of the two-year statute of limitations.  Even if Plaintiff's survivorship claims rose to the level of a constitutional deprivation, the statute of limitations for the Plaintiff's survivorship claim is governed by the two-year limitations period for the underlying personal loss and suffering claims. The Magistrate finds it unnecessary to address the issue of qualified immunity as this claim is time barred.

### d.    PLAINTIFF'S CLAIM FOR WILLFUL, WANTON AND RECKLESS CONDUCT

Plaintiff claims that Defendants failed to exercise due care and acted in a willful, wanton and reckless manner while engaged in police function activities which culminated in death.  Specifically, such reckless, wanton and willful conduct proximately caused Eric Wofford's death.

Initially, the Magistrate finds that Plaintiff's claim alleging negligence is dismissed as Defendants are protected by immunity.  Pursuant to OHIO REV. CODE § 2744.03(A)(6), Defendants are

only liable for acts or omissions outside the scope of employment or if they act with malicious purpose, in bad faith, or in a wanton or reckless manner or a statute expressly imposed liability.  There is no exception for mere negligent acts.

### 1).   WILLFUL CONDUCT.

Plaintiff contends that the individual Defendants acted in a willful manner while engaged in police function activities.  According to Plaintiff, the willful acts culminated in Eric Wofford's death.

Willful conduct implies an act done intentionally, designedly, knowingly or purposely, without justifiable excuse.  *State v. Earlenbaugh*, 18 Ohio St. 3d 19, 21, 479 N. E.2d 846, 849 (1985).  Wilful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety or purposely doing a wrongful act with knowledge or appreciation of the likelihood of resulting injury.  *Thompson v. Smith*, 178 Ohio App. 3d 656, 665-666, 899 N. E. 2d 1040, 1047-1048 (2008) (*citing Tighe v. Diamond*, 149 Ohio St. 520, 526, 80 N.E.2d 122, 127 (1948); *see also Brockman v. Bell*, 78 Ohio App. 3d 509, 515, 605 N. E. 2d 445, 449 (1992)).

The  United States Supreme Court makes it clear that a police officer may not seize an unarmed, nondangerous suspect by fatally shooting him or her.  *Brosseau v. Haugen,* 125 S.Ct. 596, 602 (2004) (*citing Tennessee v. Garner*, 105 S.Ct. 1694, 1701 (1985)).  However, where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.  *Id.*

Plaintiff has failed to present evidence sufficient to permit a reasonable jury to find that Eric Wofford did not pose a threat of serious physical harm to Plaintiff and Defendants.  Plaintiff admitted

17

in her complaint that Eric Wofford had threatened her with physical harm. Eric Wofford brandished a sword at Defendants. The threat of serious physical harm to Plaintiff and Defendants provided the justification needed to use deadly force. Under these circumstances, entry of summary judgment is appropriate against Plaintiff because when the burden shifted to her to create a genuine issue of material fact, she failed to make a sufficient showing that the justification needed to use deadly force did not exist.

### 2). WANTON AND RECKLESS CONDUCT.

Plaintiff contends that Defendants' entitlement to immunity is negated by their wanton and reckless acts which resulted in the death of her son. Therefore, they cannot assert immunity in response to this claim.

> In Ohio, wanton and reckless conduct is perversely disregarding a known risk, acting or intentionally failing to act in contravention of a duty, knowing or having reason to know of facts which would lead a reasonable person to realize such conduct creates an unreasonable risk of harm substantially greater than the risk necessary to make the conduct negligent.

*Kies ex rel. Kies v. City of Lima, Ohio,* 612 F. Supp.2d 888, 902 (N. D. Ohio 2009) (*citing Chesher v. Neyer,* 477 F.3d 784, 797 (6th Cir. 2007)).

Even though the Magistrate considered the evidence, facts, and inferences in the record in a light most favorable to Plaintiff, Defendants did not violate any safety rules, act in contravention of a duty or create an unreasonable risk of harm substantially greater than the risk necessary to constitute negligence. After consideration of the totality of circumstances, the Magistrate finds that Defendants' are entitled to statutory immunity under Ohio law from Plaintiff's claims of wanton and reckless conduct.

18

e.    PLAINTIFF'S CLAIM FOR ASSAULT AND BATTERY

Plaintiff contends that Defendants' use of force was disproportionate under the circumstances and therefore unjustifiable.  Again, the Magistrate finds that this claim is time barred.

In Ohio, assault is defined as:

> the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably placed the other in fear of such contact.  The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching.  An essential element is . . . that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact.

*Kies ex rel. Kies, supra*, 612 F. Supp. 2d at 902 (*citing Smith v. John Deere Company,* 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (1993)).

Battery is "an intentional contact with another that is harmful or offensive."  *Id.* (*citing Love v. Port Clinton,* 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988).

An action for assault or battery shall be brought within *one year* after the cause of the action accrues.  *Miller v. Village of Boston Heights,* 65 F. Supp.2d 674, 681 (N. D. Ohio 1999).  A cause of action for assault or battery accrues, for purposes of this section, upon the later of the date on which the alleged assault or battery occurred or the earlier of the date on which the plaintiff learns the identity of the assaulter or the date on which, by exercise of reasonable diligence, the plaintiff should have learned the identity of that person.  *Id*. at 681-682 (*citing* OHIO REV. CODE § 2305.111).

Applying the above statute to the facts here, the Magistrate finds that the statute of limitations bars Plaintiff's claims for assault and battery.  The alleged assault and battery occurred on November 13, 2002. Plaintiff did not file this action in federal court until July 5, 2006.  Furthermore, Plaintiff has offered no evidence to suggest that she became aware of Defendants' identities at any time later than

19

on the date of shooting. The cause of action accrued on November 13, 2002. Since Plaintiff filed her claims well beyond the one year statute of limitations provided under OHIO REV. CODE § 2305.111, the claims for assault and battery are time barred. The Magistrate need not discuss whether Defendants are entitled to immunity.

## VII. DISCUSSION OF THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS NAVARRE AND CITY.

Plaintiff seeks to hold Defendants City and Navarre liable because they failed to adequately train and supervise Defendants in their use of proper police procedure and constitutional limitations relative to their use of deadly force.

A municipality's failure to train is generally not enough to establish a constitutional violation. *Steele v. City of Cleveland,* 2009 WL 545320, *5 (N. D. Ohio 2009) (*citing City of Canton v. Harris,* 109 S. Ct. 1197, 1205 (1989); *see City of Los Angeles v. Heller*, 106 S.Ct. 1571, 1573 (1986) (holding that when a municipality is "sued only because [it was] thought legally responsible" for the actions of its officers, it is "inconceivable" to hold the municipality liable if its officers inflict no constitutional harm, regardless of whether the municipality's policies might have "authorized" such harm.) *See also Frost v. Hawkins County Board of Education,* 851 F.2d 822, 827 (6th Cir. 1988) (interpreting *Heller* as holding that a municipality cannot be liable when finding that plaintiff suffered no constitutional deprivation), *cert. denied,* 109 S.Ct. 529 (1988); *Bowman v. Corrections Corporation of America,* 350 F.3d 537, 545 (6th Cir. 2003) (agreeing with the district court's holding that without a constitutional violation of plaintiff's Eighth Amendment right by individual defendants, defendant prison could not be held liable for its policy, even if it were to encourage deliberate indifference); *Ewolski v. City of Brunswick,* 287 F.3d 492, 516 (6th Cir. 2002) ( *citing Heller* in finding no municipal liability when,

20

viewing the facts in a light most favorable to the plaintiff, the record did not establish that any employee of the city inflicted a constitutional harm upon him).  Instead, facts establishing a failure to train can be used to make the required showing that a municipal policy or custom was the "moving force" behind an already established constitutional deprivation.  *Id.* (*citing Canton*, *supra*, 109 S. Ct. at 1205).

To succeed on a failure to train or supervise claim, the plaintiff must prove the following:  (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.  *Ellis ex rel. Pendergrass v. Cleveland Municipal School District*, 455 F.3d 690, 700 (6th Cir. 2006) (*citing Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).

Plaintiff's failure-to-train claim, like the excessive force claim against Defendants, requires a predicate showing that Defendants violated Eric Wofford's Fourth Amendment right to be free from excessive force.  The Magistrate's finding that Defendant's were not liable for any constitutional deprivation against Eric Wofford forecloses Plaintiff's failure-to-train claim against Defendant City. Further, Plaintiff offered no evidence that the training program or supervisory techniques employed by Defendant Navarre were inadequate for the tasks that Defendants Avalos, Carl and Ramirez performed.  By merely asserting that such training must have been inadequate based on the events leading up to Eric Wofford's death, Plaintiff has failed to provide any legally cognizable basis for the Magistrate to find that Defendants were inadequately trained or supervised.

Defendants City and Navarre are granted summary judgment on Plaintiff's sole count against them.  Plaintiff's second claim for relief is denied.

21

## VII.  CONCLUSION

The death of Eric Wofford was a tragedy; however, when the facts are assessed under Ohio and

Sixth Circuit law, judgment must be entered in favor of all Defendants on all of Plaintiff's claims.

Defendants' Motion to Strike is denied (Docket No. 63), the Motions for Summary Judgment are

granted (Docket Nos. 45 and 46) and the case is dismissed.

**IT IS SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge


Date:   September 14, 2010

22